Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Kelly Toys Holdings, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KELLY TOYS HOLDINGS, LLC, <br><br> *Plaintiff* <br><br> v. <br><br> WWW.AXOLOTLSQUISHMALLOW.COM, WWW.BIGFOOTSQUISHMALLOW.COM, WWW.COWSQUISHMALLOW.COM, WWW.HALLOWEENSQUISHMALLOWS.SHOP, WWW.MUSHROOMSQUISHMALLOW.COM and WWW.OFFICIALSQUISHMALLOWS.COM, <br><br> *Defendants* | **23-cv-1382 (AKH)** <br><br> ~~**[PROPOSED]**~~ <br> **PRELIMINARY INJUNCTION ORDER** |

1

## GLOSSARY

| Term | Definition |
|---|---|
| **Plaintiff or Kelly Toys** | Kelly Toys Holdings, LLC |
| **Defendants** | www.axolotlsquishmallow.com, www.bigfootsquishmallow.com, www.cowsquishmallow.com, www.halloweensquishmallows.shop, www.mushroomsquishmallow.com and www.officialsquishmallows.com |
| **Shopify** | Shopify Inc., a Canadian company with an address of 150 Elgin Street, 8th Floor, Ottawa, ON K2P 1L4, Canada, and any and all affiliated companies, which operate a cloud-based e-commerce platform, available at www.shopify.com, that enables users to create online stores, manage their businesses, among other things |
| **Cloudflare** | Cloudflare, Inc., with an address of 101 Townsend Street, San Francisco, California 94107, and any and all affiliated companies, which operate a cloud-based web infrastructure platform, available at www.cloudflare.com, that enables capabilities to host static websites on a content delivery network |
| **NameCheap** | NameCheap, Inc., with an address of 600 E Washington St Ste 305, Phoenix, Arizona, 85034, and any and all affiliated companies, which operate an ICANN accredited domain name registrar and web hosting company, available at www.namecheap.com, that allows consumers to register domain names and create websites |
| **GoDaddy** | GoDaddy Inc, with an address of 2155 E GoDaddy Way, Tempe, Arizona 85284, and any and all affiliated companies, which operate a domain name registrar and web hosting company, available at www. www.godaddy.com, that allows consumers to register domain names and create websites |
| **AWS** | Amazon Web Services, with an address of 410 Terry Avenue North, Seattle 98109, Washington, and any and all affiliated companies, which provides on-demand cloud computing platforms and APIs to individuals, companies, and governments, on a metered, pay-as-you-go basis, available at https://aws.amazon.com/ |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, NY 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* application for: 1) a temporary restraining order; 2) an order restraining Defendants' |

| | |
|---|---|
| | Websites (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery |
| **Padawer Dec.** | Declaration of Jeremy Padawer in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |
| **Squishmallows Application** | U.S. Trademark Serial Application No. 90/676,140 for "ORIGINAL SQUISHMALLOWS," for goods in Class 28 |
| **Squishmallows Registrations** | U.S. Trademark Registration Nos.: 6,457,232 for "SQUISHMALLOWS" for goods in Class 28; 5,454,574 for "SQUISHMALLOW" for goods in Class 28; 6,137,521 for "FLIP A MALLOWS" for goods in Class 28; 5,962,289 for "MYSTERY SQUAD" for goods in Class 28; 2,029,047 for "KELLYTOY" for goods in Class 28; and 6,654,108 for "SQUISHMALLOWS HUG MEES" for goods in Class 28 |
| **Squishmallows Marks** | The marks covered by the Squishmallows Registrations and Squishmallows Application |
| **Squishmallows Works** | The works covered by the U.S. copyright registrations listed in Exhibit C to the Complaint |
| **Squishmallows Products** | A line of loveable buddies made with a super soft, marshmallow-like texture that come in a variety of sizes from 3.5 inch clip-ons to extra large 24 inch plush toys, and include styles such as Hug Mees, Stackables, Mystery Squad and Flip-A-Mallows |
| **Counterfeit Products** | Products bearing or used in connection with the Squishmallows Marks and/or Squishmallows Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Squishmallows Marks and/or Squishmallows Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks and/or Squishmallows Works and/or products that are identical or confusingly or substantially similar to the Squishmallows Products |
| **Defendants' Websites** | Any and all fully interactive websites held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, that they operate to communicate with consumers regarding their Counterfeit Products and/or through which consumers |

| | |
|---|---|
| | purchase Counterfeit Products for delivery in the U.S., including, without limitation, Defendants' websites located at www.axolotlsquishmallow.com, www.bigfootsquishmallow.com, www.cowsquishmallow.com, www.halloweensquishmallows.shop, www.mushroomsquishmallow.com and www.officialsquishmallows.com, along with the domain names associated therewith |
| **Infringing Domain Names** | www.axolotlsquishmallow.com, www.bigfootsquishmallow.com, www.cowsquishmallow.com, www.halloweensquishmallows.shop, www.mushroomsquishmallow.com and www.officialsquishmallows.com |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by Defendants or Defendants' Websites (whether said accounts are located in the U.S. or abroad) |
| **Financial Institutions** | PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), PingPong Global Solutions, Inc. ("PingPong") and ShopPay |
| **Third Party Service Providers** | Any third party providing services in connection with Defendants' Counterfeit Products and and/or Defendants' Websites, including, without limitation, Internet Service Providers ("ISP"), back-end service providers, web designers, merchant account providers such as Shopify Inc. ("Shopify"), any providing shipping and/or fulfillment services, Dept # T42 Shipping Dept located at 1055 Sesame Street, Franklin Park, Illinois 60131, 14709 182nd Street, Jamaica, NY 11413, 1000 High Street, Perth Amboy, New Jersey 08861, website hosts, such as Cloudflare, Inc. ("Cloudflare"), domain name registrars, such as GoDaddy.com, LLC ("GoDaddy"), NameCheap, Inc. ("NameCheap"), Amazon Web Services ("AWS") and domain name registries |

WHERAS, Plaintiff moved *ex parte* on February 17, 2023 against Defendants for the following: 1) a temporary restraining order; 2) an order restraining Defendants' Websites and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery;

WHEREAS, the Court entered an Order granting Plaintiff's Application on February 21, 2023 (the "TRO"), which ordered Defendants to appear on March 6, 2023 at 12:00 p.m. to show cause why a preliminary injunction should not issue (the "Show Cause Hearing");

WHEREAS, on February 24, 2023, pursuant to the alternative methods of service authorized by the TRO, Plaintiff served the Summons, Complaint, TRO and all papers filed in support of the Application Defendants' email addresses mycustomerservice11@gmail.com, cs@soufeel.com, cowsquishmallow@yahoo.com, halloweensquishmallows.shop@gmail.com and cs@bigfootsquishmallow.com, Plaintiff was unable to serve the aforementioned documents on the following email addresses: support@axolotlsquishmallow.com, support@cowsquishmallow.com, support@halloweensquishmallows.shop and support@officialsquishmallows.com;

WHEREAS, on March 6, 2023 at 12:00 p.m., Plaintiff appeared at the Show Cause Hearing, however no Defendants appeared.

THE COURT FINDS THE FOLLOWING:

~~, A.     Plaintiff is one of the world's most influential, leading manufacturers and distributors~~ of high-quality plush toys and gifts, and is known ~~for its~~ best-selling brands, including Pillow ~~Chums, Kellybaby and Kellypet~~ ("Kelly Toys Brand(s)");



B.      Plaintiff sells its Kelly Toys Products in major retailers, department stores and online marketplaces, including, but not limited to: Walmart, Justice, Target and Amazon;

C.      One of the most popular Kelly Toys Brands is Squishmallows, a line of loveable buddies made with a super soft, marshmallow-like texture that come in a variety of sizes from 3.5-inch clip-ons to extra-large 24 inch plush toys. The Squishmallows Products have expanded to other styles, including Hug Mees, Stackables, Mystery Squad and Flip-A-Mallows;

D.      Recently, Squishmallows won the 2022 "Toy of the Year" award as well as the "People's Choice" award and "Plush Toy of the Year" at the Toy of the Year awards ceremony;

E.      ~~While Kelly Toys has gained significant common law trademark and other rights in its Squishmallows Products, through its and/or its predecessor's use, advertising and promotion,~~ Kelly Toys has ~~also~~ protected its valuable rights by filing for and/or obtaining federal trademark registrations;

F.      For example, Kelly Toys is the owner of the Squishmallows Registrations (i.e., U.S. Trademark Registration Nos. 6,457,232 for "SQUISHMALLOWS" for goods in Class 28; 5,454,574 for "SQUISHMALLOW" for goods in Class 28; 6,137,521 for "FLIP A MALLOWS" for goods in Class 28; 5,962,289 for "MYSTERY SQUAD" for goods in Class 28; 2,029,047 for "KELLYTOY" for goods in Class 28; and 6,654,108 for "SQUISHMALLOWS HUG MEES" for goods in Class 28). Kelly Toys also applied for the registration of the Squishmallows Application (i.e., "ORIGINAL SQUISHMALLOWS," which is covered by U.S. Trademark Serial Application No. 90/676,140 for goods in Class 28). The Squishmallows Marks are currently in use in commerce in connection with Squishmallows Products;

G.      In addition, Kelly Toys is also the owner of unregistered and registered copyrights in and related to the Squishmallows Products;

H.      For example, Kelly Toys owns the Squishmallows Works, and the U.S. copyright registrations covering the same, which are listed in in Exhibit C to the Complaint;

I.      The success of the Squishmallows Products is due in part to Plaintiff and its predecessor's marketing and promotional efforts.  These efforts currently include advertising and promotion  through  social  media,  the  Squishmallows  website  (available  at https://squishmallows.com/), among other efforts domestically and abroad, including in New York. Plaintiff's success is also due to its use of high-quality materials and processes in making the Squishmallows Products. Additionally, Plaintiff owes a substantial amount of the success of the Squishmallows Products to its consumers and word-of-mouth buzz that its consumers have generated. Plaintiff's efforts, the quality of its Squishmallows Products, its marketing, promotions and distribution efforts, as well as the word-of mouth-buzz generated by its consumers, have made the Squishmallows Products, Squishmallows Marks and Squishmallows Works prominently placed in the minds of the public.  Retailers, retail buyers, consumers and members of the public have  become  familiar  with  the  Squishmallows  Products,  Squishmallows  Marks  and Squishmallows Works and associate them exclusively with Plaintiff. As a result of such associations, Plaintiff and its Squishmallows Marks and Squishmallows Works have acquired a valuable reputation and goodwill among the public;

J.      Plaintiff has gone to great lengths to protect its interests in and to the Squishmallows Products, Squishmallows Marks and Squishmallows Works.  No one other than Plaintiff and its authorized licensees and distributors is authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Squishmallows Marks or Squishmallows Works without the express permission of Plaintiff;

K.    Through Plaintiff's investigative and enforcement efforts, we learned of Defendants' actions, which vary and include, but are not limited to: 1) manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Counterfeit Products bearing or used in connection with one or more of the Squishmallows Marks and/or Squishmallows Works, and/or in packaging and/or containing labels and/or hang tags bearing the Squishmallows Marks and/or Squishmallows Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks and/or Squishmallows Works, and/or that are identical or confusingly or substantially similar to the Squishmallows Products to U.S. consumers, including those located in the State of New York, through Defendants' Websites; and/or 2) using one or more of the Squishmallows Marks and/or reproducing, displaying and/or distributing the Squishmallows Works, or marks or works confusingly or substantially similar thereto, on Defendants' Websites, including in the Infringing Domain Names;

L.    Through visual inspection of Defendants' Websites, including their listings for Counterfeit Products, Plaintiff confirmed that Defendants are using one or more of the Squishmallows Marks and/or reproducing, displaying and/or distributing one or more of the Squishmallows Works, without Plaintiff's authorization, including using one of the Squishmallows Marks in the Infringing Domain Names associated therewith;

M.    Defendants are not, and have never been, authorized by Plaintiff to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Squishmallows Products or to use the Squishmallows Marks and/or Squishmallows Works, or any marks and/or works that are confusingly and/or substantially similar to the Squishmallows Marks and/or Squishmallows

Works. Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Squishmallows Products, only with minor variations that no ordinary consumer would recognize;

N.     During its investigation, Epstein Drangel confirmed that the products Defendants offer for sale using virtually identical copies of the Squishmallows Marks and/or Squishmallows Works are, in fact, Counterfeit Products;

O.     Defendants' Websites prominently feature the Squishmallows Marks and Squishmallows Works, including in the Infringing Domain Names, and Epstein Drangel also confirmed that Defendants accept payment in U.S. dollars, via PayPal, Shop Pay, credit or debit card, and ship to the U.S.;

P.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the Squishmallows Marks, Squishmallows Works and Squishmallows Products;

Q.     Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff;

R.     Plaintiff is likely to prevail on its Lanham Act, copyright and related state law claims at trial;

S.     As a result of Defendants' infringements, Plaintiff is likely to suffer an immediate and irreparable injury if a preliminary injunction order is not granted;

T.      The balance of potential harm to Defendants of being prevented from continuing to profit from their illegal and infringing activities if a preliminary injunction order is not issued is far outweighed by the potential harm to Plaintiff, its business and the goodwill and reputation built up in and associated with the Squishmallows Marks and Squishmallows Works if a preliminary injunction order is not issued;

U.      The public interest favors issuance of the preliminary injunction order in order to protect Plaintiff's interests in and to its Squishmallows Marks and Squishmallows Works, and to protect the public from being deceived and defrauded by Defendants' passing off of their substandard Counterfeit Products as Squishmallows Products;

V.      Defendants were served with copies of the TRO, together with the Summons and Complaint, and all papers filed in support of Plaintiff's Application seeking the TRO via electronic means pursuant to the terms of the TRO;

W.      No Defendants have filed a response in opposition to Plaintiff's request for entry of a preliminary injunction or have otherwise formally appeared in this case; and

X.      Accordingly, this Court, having determined that it has subject matter jurisdiction over the claims and personal jurisdiction over Defendants, finds that entry of a preliminary injunction order is necessary and appropriate.

## ORDER

1. Plaintiff is entitled to injunctive relief through the pendency of this litigation, and issuing this Order is warranted under Federal Rule of Civil Procedure 65 and Section 34 of the Lanham Act.

    a) Accordingly, Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of

this action or until further order of the Court:

i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products or any other products bearing the Squishmallows Marks and/or Squishmallows Works and/or marks and/or artwork that are confusingly and/or substantially similar to, identical to and constitute a counterfeiting or infringement of the Squishmallows Marks and/or Squishmallows Works;

ii.   directly or indirectly infringing in any manner Plaintiff's Squishmallows Marks and/or Squishmallows Works;

iii.   using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Squishmallows Marks and/or Squishmallows Works, to identify any goods or services not authorized by Plaintiff;

iv.   using Plaintiff's Squishmallows Marks and/or Squishmallows Works and/or any other marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks and/or Squishmallows Works on or in connection with Defendants' Websites and/or Defendants' manufacturing, importation, exportation, advertising, marketing, promotion, distribution, offering for sale, sale and/or otherwise dealing in Counterfeit Products;

v.   using any false designation of origin or false description, or engaging in any action that is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised,

marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants, website owned or operated by Defendants, services provided by Defendants and/or Defendants' commercial activities by Plaintiff;

vi.   secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' Websites, Defendants' Assets and/or the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

vii.  effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order;

viii. linking, transferring, selling and/or operating Defendants' Websites;

ix.   registering, trafficking in or using any domain names that incorporate any of Plaintiff's Squishmallows Marks and/or Squishmallows Works or any other marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks and/or Squishmallows Works, or any colorable imitation thereof, including the Infringing Domain Names; and

x.    knowingly instructing any other person or business entity to engage in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(ix) above, and

1(b)(i) through 1(b)(ii) and 1(c)(i) through 1(c)(ii) below.

b) Accordingly, Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers and Financial Institutions who satisfy those requirements and are identified in this Order are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

    i. secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court;

    ii. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with any computer files, data, business records, documents or any other records or evidence relating to Defendants' Assets and Defendants' Financial Accounts; and

    iii. knowingly instructing any person or business entity to engage in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(ix) and 1(b)(i) through 1(b)(ii) above, and 1(c)(i) through 1(c)(ii) below.

c) Accordingly, Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers who satisfy those requirements and are identified in this Order are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

    i.  providing services to Defendants, including, without limitation, those in connection with the continued operation of Defendants' Websites;

    ii.  permitting the transfer, sale and/or assignment of Defendants' Websites; and

    iii.  knowingly instructing any other person or business entity to engage in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(ix), 1(b)(i) through 1(b)(ii) and 1(c)(i) through 1(c)(ii) above.

2.  As sufficient cause has been shown, the asset restraint granted in the TRO shall remain in place through the pendency of this litigation, including that:

    a)  within five (5) days of receipt of service of this Order, any newly discovered Financial Institutions shall locate and attach Defendants' Financial Accounts, provide written confirmation of such attachment to Plaintiff's counsel and provide Plaintiff's counsel with a summary report containing account details for any and all such accounts, which shall include, at a minimum, identifying information for Defendants and Defendants' Websites, including contact information for Defendants (including mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendants' Financial Accounts.

3.  As sufficient cause has been shown, the expedited discovery previously granted in the TRO shall remain in place through the pendency of this litigation, including that:

    a)  Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendants who are served with this Order shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.

b) Plaintiff may serve requests for the production of documents pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Defendants who are served with this Order and the requests for the production shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

c) Plaintiff may serve subpoenas on all Financial Institutions who receive service of this Order to provide Plaintiff's counsel with all documents and records in their possession, custody or control (whether located in the U.S. or abroad), relating to any and all of Defendants' Financial Accounts, User Accounts and Merchant Storefronts, including, but not limited to, documents and records relating to:

  i.   account numbers;

  ii.  current account balances;

  iii. any and all identifying information for Defendants and/or Defendants' Websites, including names, addresses and contact information;

  iv.  any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents, and if a business entity, any and all business documents provided for the opening of each and every of Defendants' Financial Accounts;

  v.   any and all deposits and withdrawals during the previous year from each and every one of Defendants' Financial Accounts and any and all supporting documentation, including, but not limited to, documents sufficient to identify the geographic location(s) of any consumers from which deposits were sent, deposit slips, withdrawal slips, cancelled checks and account statements; and

vi. any and all wire transfers into each and every of Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the geographic location(s) of the transferor(s), the identity of the beneficiary's bank and the beneficiary's account number.

d) Plaintiff may serve subpoenas on all Third Party Service Providers to provide to Plaintiff's counsel all documents and records in its possession, custody or control (whether located in the U.S. or abroad) relating to Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, documents and records relating to:

i. account details, including, without limitation, identifying information and account numbers for any and all accounts or websites that Defendants have ever had and/or currently maintain with the Third Party Service Providers;

ii. the identities, location and contact information, including any and all e-mail addresses of Defendants;

iii. the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' Websites, a full accounting of Defendants' sales history and listing history under Defendants' Websites and Defendants' Financial Accounts with any and all Financial Institutions associated with Defendants' Websites; and

iv. Defendants' manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit

Products, or any other products bearing the Squishmallows Marks and/or Squishmallows Works and/or marks and/or artwork that are confusingly and/or substantially similar to, identical to and constitute an infringement of the Squishmallows Marks and/or Squishmallows Works.

4. As sufficient cause has been shown, and pursuant to FRCP 4(f)(3), service may be made on, and shall be deemed effective as to Defendants if it is completed by the following means:

a) delivery of: (i) a PDF copy of this Order; and (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this lawsuit accessible through ipcounselorslawsuit.com) where Defendants will be able to download a PDF copy of this Order, to Defendants' e-mail addresses, mycustomerservice11@gmail.com, cs@soufeel.com, cowsquishmallow@yahoo.com and halloweensquishmallows.shop@gmail.com, support@axolotlsquishmallow.com, cs@bigfootsquishmallow.com, support@cowsquishmallow.com, support@halloweensquishmallows.shop and support@officialsquishmallows.com.

5. As sufficient cause has been shown, such alternative service by electronic means ordered in the TRO and herein shall be deemed effective as to Defendants, Third Party Service Providers and Financial Institutions through the pendency of this action.

6. As sufficient cause has been shown, service of this Order shall be made on and deemed effective as to the Third Party Service Providers and Financial Institutions if it is completed by the following means:

a) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal

Inc. will be able to download a PDF copy of this Order via electronic mail to PayPal Legal Specialist at EEOMALegalSpecialist@paypal.com;

b) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Shopify Inc. will be able to download a PDF copy of this Order via electronic mail to legal@shopify.com and orders@shopify.com;

c) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Cloudflare, Inc. will be able to download a PDF copy of this Order via electronic mail to abuse@cloudflare.com;

d) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where NameCheap, Inc. will be able to download a PDF copy of this Order via electronic mail to Legal@namecheap.com;

e) delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where GoDaddy will be able to download a PDF copy of this Order via electronic mail to compliancemgr@godaddy.com and courtdisputes@godaddy.com

f) delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Amazon Web Services will be able to download a PDF copy of this Order via electronic mail to abuse@amazonaws.com;

g) delivery of a copy of the TRO to JFK 14709 182nd Street, Jamaica, NY 11413;

h) delivery of a copy of the TRO to Dept # T42 Shipping Dept 1055 Sesame Street, Franklin Park, Illinois 60131; and

i) delivery of a copy of the TRO to 1000 High Street, Perth Amboy, New Jersey 08861.

7.  Defendants are hereby given notice that they may be deemed to have actual notice of the terms of this Order and any act by them or anyone of them in violation of this Order may be considered and prosecuted as in contempt of this Court.

8.  The $5,000.00 bond posted by Plaintiff shall remain with the Court until a final disposition of this case or until this Order is terminated.

9.  This Order shall remain in effect during the pendency of this action, or until further order of the Court.

10. Any Defendant that is subject to this Order may appear and move to dissolve or modify the Order on two (2) days' notice to Plaintiff or on shorter notice as set by the Court.


**SO ORDERED.**

SIGNED this ___ day of _____, 2023, at ___ p.m.
New York, New York

HON. ALVIN K. HELLERSTEIN
UNITED STATES DISTRICT JUDGE